The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez! Oyez! Oyez! All present have an intermittent form of business before the Honorable, the Judges of the United States Court of Appeals. I ask for their attention, for the Court is now sitting. God save the United States and this Honorable Court. Hello, everybody. Good afternoon. May it please the Court. We are asking you to hold that the Fifth Amendment privilege against self-incrimination applies at a supervisor-lease revocation proceeding and that it was violated in Mr. Ka's revocation. Mr. Ka faced a realistic threat of being imprisoned for refusing to answer his probation officer's incriminating questions. The release terms of his supervision threatened a sanction for violating his answer-all conditions with invoking the privilege against self-incrimination that could lead to revocation and re-imprisonment. And then the government's actions during his supervision rendered that threat real and concrete. So his condition was the defendant shall answer truthfully all the inquiries by the probation officer. This condition, in its plain, unambiguous language, required him to answer all questions. By definition, this excluded the privilege against self-incrimination, which is a refusal to answer questions. And the Seventh Circuit in Thompson, indeed, agreed that that was precisely the meaning. The United States Sentencing Commission also recognized the Fifth Amendment privilege problem in their standard condition that Mr. Ka was subject to and substantively amended that guideline to get rid of the all language and add a specific application note that the self-incrimination issue. So the terms of his supervision set out a threat. And then the government's actions here made the threat concrete and real. Specifically, the probation officer explicitly threatened Mr. Ka with imprisonment for violating his conditions. Now, indeed, the particular violation was for testing positive with drugs. But nonetheless, this was an explicit threat to Mr. Ka that conduct violating the conditions will result in imprisonment. And the second action is that the probation officer actually executed that threat and imprisoned him for 15 days for violating his condition. Can I ask you a question? So if we're talking about sort of the penalty issue, the magistrate judge, the district court, both found that the government had not effectively penalized the invocation of the Fifth Amendment right. Do we review that for clear error? Is that a factual finding that we would look at for clear error? I believe that's maybe a mixed question of law and fact. So the ultimate determination is going to be a question of law. But particular factual findings would be reviewed under clear error. And so here, I really I don't think there's, you know, disagreements. You know, Mr. Enright will be able to correct me if I'm wrong. As to the facts, the question is, what are the legal consequences of those facts? So there's no contest, then, that the probation officer did not allude to this answer all questions condition. Did not say, if you don't answer my questions, we're going to revoke. There's no evidence, no direct evidence that the petitioner felt threatened or compelled. Nothing particularly compelling about the context. All of that we're just taking as a given. Yeah, I mean, yes, there's there's no evidence that the probation officer referenced the answer all condition during the meeting where the incriminating questions were asked. But nonetheless, the probation officer testified that she explained the terms and conditions, which included the answer all condition. The probation officer threatened Mr. Kahl with imprisonment for violating his condition. And then the government actually deployed the imprisonment enforcement mechanism through unlawful means because they imprisoned him as punishment for noncompliance through a modification proceeding. So in that in that sense, that is one of the critical distinguishing facts against the case United States versus Lara, where this court found there was not a concrete threat of revocation. The court heavily relied. Sorry. In Lara, we said that for a supervised release revocation to be a sufficient penalty, it had to be nearly certain that it would follow from invocation of the Fifth Amendment. Right. Is that are you arguing that it was nearly certain here that had the defendant invoked supervised release would have been revoked? Well, I'm arguing that this case satisfies Laura's test. And what Laura said was, quote, the threat of revocation must be nearly certain. So in Lara, it wasn't. Laura's was, you know, they had to complete sex offender treatments and Laura made incriminating statements at an intake interview and then had to submit to polygraph testing deemed appropriate. And then furthermore, the condition conditions were just maybe revoked upon good cause shown. So that is far more ambiguous than the condition we have here, which the drafter sentencing commission and Seventh Circuit have found squarely forecloses and forces a waiver of the self incrimination clause. And then secondly, in Lara, they relied heavily on the fact Laura would get a hearing before a court at which the government could not revoke him for invoking the privilege. You cannot rely on that assumption here. The government's actions in that case directly undermine that that is how things would proceed. They could and they did file a petition and proceed on paper to imprison someone for to imprison Mr. Copper, violating his conditions through a modification during which he never once spoke to a lawyer or a judge before he was sent to jail. So how do we how do we even get to this question if Raleigh controls? I mean, it looks like Raleigh looks to be on all fours with this case. And if it controls, you lose, don't you? If Raleigh controls, I lose. But Raleigh does not control and Raleigh does not control because because the Supreme Court's decision in Hayman versus the United States has clearly undermined that case and therefore warrants this court reviewing the question under the current legal landscape. How does Hammond undermine it? Because you've got a plurality decision. Is that the case you had a plurality decision in? Judge Breyer's opinion is a controlling opinion. Judge Breyer makes it clear he is just talking about 3583-K. He says he's not talking about 3583-E. So how can we read that as overruling Raleigh? Because the judgment of the Supreme Court in Hayman versus the United States with five justices held that the Sixth Amendment. I understand. I don't want to interrupt you on that. I got to judge. I'm talking about the holding of the case, which is controlled by the plurality opinion with Justice Breyer. And there is reading of it. And it is Breyer's opinion that controls. I got the judgment of it. That's all we had. That's one thing. But you have expressed language there in his opinion. How do we get around that? Well, I mean, the judgment of the court is no different than Breyer's judgment in his case, which is that And I'm not going to argue with you about the judgment. The judgment is the outcome. But the reasoning is in Breyer's opinion. And there's expressed language in it. And you can look at the judgment. We know what the judgment is. But how did he get there is really what's important in terms when we're talking about overruling a prior case or a case of the Fourth Circuit. And it looks pretty explicit. Do you do you do you not recognize or do you do you argue with the fact that Breyer limits his opinion to 3583 K and makes it clear he's not talking about 3583 E. So I do disagree. But it's kind of going to be an involved part or question. Tell me what you disagree with. What are you disagreeing with? Are you disagreeing that he limited in that fashion? And if he did, tell me how he did not. I did. So Justice Breyer's opinion in Haman stands for the proposition that defendants are entitled to the constitutional trial guarantees in a revocation that Justice Breyer would afford defendants at their original sentencing. And that is the best and correct interpretation of Haman. And you get there by you look at the fact that Justice Breyer, as well as Justice Gorsuch's plurality, agree with Johnson's premise that a revocation is part of the sentence. So now the hard part is the reasoning and how you get there. But Justice Breyer's very first sentence is that he is analogous to a parole revocation, which is the entire premise of Riley. So I just don't understand how if we're working from Justice Breyer's opinion, his very first sentence is basically, look, I agree with Riley. But once we move over into 3583 K, I've got some issues. I guess I just I just disagree that that Riley that Riley comports with Haman. I mean, Riley's holding was a bright line rule that the constitutional trial guarantees simply don't apply in revocation. And that is irreconcilable with the Supreme Court's decision in Haman that I want to be clear on that. And I understand you disagree. But the question is, does Justice Breyer with it? I mean, I got your point. You can't get there and you must argue what you are arguing, because, as you said, Riley controls you out of it. So you got to find a way. But I think for us to get there, it's not a question of whether you disagree. It's a question of tell me where Justice Breyer and Judge Harris just read the sentence at the beginning that seems to set the stage for where we are. We've got to get around that. I mean, we I think when you look at it fundamentally, we were dealing with this in a clean slate. You know, I have a lot of sympathy for your position on this, but Riley is pretty straight on point here. And Justice Breyer's opinion controls and he has severely limited the scope of his opinion. Has he not? He has limited the scope of his opinion to comport with his view of the rights that are afforded defendants at original sentencing. So Justice Breyer's concurrence and Haman explicitly said, I'm not going to transplant Apprendi line of cases to supervisor because of the destabilizing consequence. And then he cites to the Apprendi line of cases where he dissents. And his dissents in the Apprendi line of cases are clear. He doesn't think a defendant at original sentencing has a Sixth Amendment jury trial right to quote traditional sentencing factors, even though those traditional sentencing factors may include legislatively prescribed punishment. So he is finding the same. I just want to tell you my concern about this and give you a chance to address it. This is my concern. It seems to me that it's sort of our obligation when we have circuit precedent on point and then a Supreme Court decision to try to harmonize them if we can. And there is a way to harmonize these. We absolutely could say that the Supreme Court held in Haman that some constitutional protections are going to apply in some supervised release contexts. But we held in Riley that the Fifth Amendment doesn't apply under 3583E. And both of those things can be right at the same time. And my concern is that if there's not an actual conflict, I don't want to be in a situation where one panel can ignore a prior panel precedent just because they think, you know, there's been a Supreme Court decision that certainly sheds some new light on this area and down the road it might have implications. And I'm thinking in particular of the whole Castleman line of cases where we as a court have spent a lot of time sort of really very finely going through and saying, look, Castleman, sure, it changes generally the way we think about what counts as, you know, one of our prior opinions, we're going to go with the prior opinion. And that seems like the right approach to me, to have a very high standard for when one panel is able to say, you know, as I look ahead to where a Supreme Court precedent might take us, I feel that I am no longer bound by what my own court said last year. That's my concern. Right. And it's a very valid concern. And, you know, I completely understand that. I think this is a rare case where it meets that standard. I do not. Riley is irreconcilable or Haman is irreconcilable with Riley. And, you know, and because of the bright line rule. So it's not my argument may seem general, but that's not a feature of my argument. That is a feature of the Riley decision. The Riley decision didn't address the Fifth Amendment anyways. They said, well, well, well, you're putting the cart before the horse. The first question is are supervised release proceedings part of a criminal prosecution to which the constitutional guarantees can even apply in any case? And Riley said no. And Haman says that's not right. So, you know, if this court had had a prior precedent saying public school children don't have constitutional rights in school and then the Supreme Court decided, hey, public school children have a right to the First Amendment to wear black armbands to protest the Vietnam War. That prior precedent couldn't hold. There's no way that this that a student can have a First Amendment right while having no constitutional rights. And that is precisely what we have here with Riley and Haman. So if Riley is incorrect in saying the dispositive issue is simply identifying whether or not the proceeding was a revocation case, then it's this panel's obligation to then decide the question out without that flaw under Haman's reasoning. And in this case, looking at Justice Breyer's opinion, which is telling you, listen, revocations are treated the same as sentencing. The only difference is the majority of the Supreme Court will only go along with the sentencing rights that Justice Breyer agrees with. And we know Justice Breyer agrees the privilege against self-incrimination applies at sentencing. He held as much with the court in Mitchell v. United States. If there are no other questions, I'll reserve the rest of my time. Thank you, Counsel. Thank you. Mr. Enright. Thank you, Your Honor. Good afternoon. May it please the Court. Anthony Enright for the United States. The District Court properly denied Daniel Kaa's motion to have Riley, the self-incrimination clause, creates a trial right, and it's violated only if compelled statements are used in a criminal trial. We'll cut to the chase in this case, if you will. I'd be happy to, Your Honor. We could spend a little time going into all of the facts, but we need to at least address that. You have the Riley case. We've discussed back and forth with the counsel for the defendant how she interprets the Hammond decision as having overruled our Riley decision, and we need to go to the reasoning of it. It does seem clear to me that Riley, that Hammond limits itself to 3583K, and if it can be harmonized with Riley, we should go in that direction. Is that your argument? Essentially, Your Honor, I think that's exactly right. Justice Breyer's opinion, as Your Honor mentioned, is controlling, and he begins by discussing 3583E. That wasn't at issue in Hammond, and the Court really didn't hold anything about it, but what that opinion said about it is that 3583E revocations, which is the kind to which Kaa was subject, are just like parole, and the Supreme Court had held that parole and probation are not part of the criminal prosecution. That was the basis for Riley, and it remains intact. This Court, as it held in Taylor v. Grubbs, it does not overturn its own precedent lightly. You need something that really undercuts it, and an opinion like Hammond that doesn't address either 3583E or the self-incrimination clause, and does not purport to undermine anything that the Taylor Court relied on, does not undercut it. But it does, Counsel. It does. Doesn't it? Hammond is saying that the whole idea of the structural difference between parole and probation and revocation sentencing has constitutional consequences. If there's anything seismic about Hammond, it is that idea that that difference has a consequence, a constitutional consequence, and the question is that Riley did not wrestle with that issue. It's just per se. If it's revocation, it's not criminal proceedings, none of those constitutional protections, that's totally undermined by Hammond. Now the question is how broad that is, but that's for this Court. As Counsel Baldwin rightfully said, if the Supreme Court announces a broader question that we need to look at in terms of constitutional protection, we can't hold on to some precedent like Riley that dismissed it out of hand per se and never even grappled with what the Supreme Court is doing. Supreme Court has given us messages about constitutional involvement, and it's wrong to say it is categorically not protected, like a criminal proceeding, that none of these constitutional protections. And therefore Riley is not worthy of that type of continued, dogged, inveterate loyalty to it. And so therefore, this Court is evolving, and Justice Breyer is one of those who always talk about where the Court is, that it speaks for a time now. It's not just manacled to some idea of originalism or some 200 years ago, but it's what it speaks for America now. And you look at these revocation sentences, that's really the reason why a lot of people are getting these, not only on top of draconian sentences, but they're going there and they're getting more time. It's a different fundamental difference between probation and these revocation sentences. And they're acting like criminal trials. The only difference is you just don't have many constitutional rights, like hearsay and all those things. We're deprived also of the basic rights of the Fifth Amendment, a right not to be forced to incriminate yourself to. That's what the Supreme Court has yet said. But yeah, I guess if you want to say, well, it didn't exactly say this, we can save some space by saving our face. But if we're going to face what Justice Breyer was talking about, the constitutional consequences raised, because they are different. Your Honor, I do think Justice Breyer's opinion actually does address that issue, because he specifically distinguishes between a revocation proceeding under 3583K and he says, because that is so much more like a criminal prosecution in the traditional sense, a new penalty for a new offense, then it's much more like a criminal offense to which the full panoply of constitutional rights should attach. And because they don't, it's unconstitutional in that instance. But then he specifically distinguished 3583E and said, I agree that the ordinary revocation proceedings under 3583E are more like traditional parole to which the court had previously held, does not receive the full panoply of constitutional protections. Now, it does receive some. There's a Fifth Amendment due process right that attaches. And there are a number of statutory and rule-based rights, including a qualified right against hearsay in an ordinary revocation proceeding. But the Supreme Court specifically addressed, to the extent Justice Breyer addressed 3583E, he specifically addressed that and conducted what I think is essentially the kind of analysis you're talking about and concluded that it is more like traditional parole and ordinarily does not involve the entire panoply of constitutional rights. And I certainly understand Your Honor's concerns that you've raised, but I don't think it does, Your Honor. Because to the extent Justice Breyer looked at that reasoning, he essentially reaffirmed it. Because Riley's reasoning was that, look, supervised release  revocations of the 3583E kind are like traditional parole. And that's essentially what Justice Breyer himself concluded in that opinion. I do want to talk briefly, even if this Court were to disagree with me on that. I don't believe this is an example where Mr. Kaa's statements were compelled. Because another example where precedent is controlling, Minnesota v. Murphy held that a general obligation to appear and answer questions truthfully does not convert an otherwise voluntary statement into compelled ones. And it gave us a standard. Minnesota v. Murphy wasn't about magic words. If that general obligation uses the term all or any or just says answer questions truthfully, that wasn't what it was looking at. What it held was, was the defendant under a legal compulsion comparable to the legal compulsion that any witness faces if they show up to testify at a grand jury proceeding or at a trial? Or is it more than that? And a general obligation to show up and answer questions truthfully doesn't exert more compulsion than that ordinary witness faces? Certainly, Your Honor. I understand what you're saying about Murphy. Are you, is it important to your argument that the district court was correct in the way it construed the supervised release condition here? So the district court specifically finds that this condition that you shall answer truthfully all inquiries does not require you to answer all inquiries. If I think that's wrong, can I still agree with you on this? I think so, Your Honor. I think the way the court parsed out the language is not necessarily the controlling factor, but on that very same page that the court's holding, it referred to the oath and said this is not more of a compulsion than the oath. So even if you took the condition as stating a general requirement that you have to answer any question the probation officer might put to you, what White said is that look, somebody faced with that ordinary requirement is still going to understand and still going to have to say, look, I'm not going to do that. I'm going to instead invoke my right to self-incrimination. I want to note something in response to my friend's assertion. The requirement is that you impose a penalty. The state has to impose or threaten a penalty for invocation of the right against self-incrimination. It's not enough to impose a penalty for drug use or failing a drug test. And we have not done that and we cannot do that. Not only did Murphy hold that, but this court held that and Lara, the Supreme Court has reiterated it in Verdugo-Riquidez. It is not something we could do and the chief judge of the Western District of North Carolina says that the standard condition doesn't require that and that it wouldn't be enforceable in any event. So that is a relevant fact to the same extent it was relevant in Minnesota v. Murphy. He didn't face, Mr. Kaa didn't face any more of an obligation to give up his right of self-incrimination as an ordinary trial. And for that reason, his statements were not compelled in any event. Now, if the court doesn't have any more questions, I'd be happy to yield the balance of my time, but I want to make sure I've answered everything the court might want to ask. Okay, well I appreciate your accommodating this video and my rather background as a mind of its own, so I apologize for that, Your Honor. But I'll yield the balance of my time back to the court and ask that this court affirm the district court's judgment. Thank you, counsel. Ms. Fowler? Thank you, Your Honor. So a couple of points. First, I'll just quickly address some of the points on the penalty doctrine and then turn to the question of Riley's continuing impact. The government said that Mr. Kaa's condition is like Murphy's. That is simply not true. The condition in Murphy was simply to be truthful with the probation officer in all matters. And so that left an opening to refuse to answer questions. It is the contrary case. Can I ask you about that? Because in Murphy itself, it seemed like what the court really emphasized, look, there is nothing that expressly says you may not decline to answer questions. And there's nothing that says you may not decline to answer questions about any of this. It's sort of on the probationer to try to clarify the scope. And so I do understand what you're saying about the difference maybe in the conditions, but what really seemed important to the court in Murphy is that sort of just a general condition saying you have to answer, you know, you basically have to answer truthfully like any witness who shows up at trial. Unless there's some express statement, this means you imposed a penalty. How do I address that part of the language in Murphy? Well, I think you just by looking at the language of the conditions. And so Murphy left an ambiguity that allowed the court to find maybe he could invoke the privilege against self-incrimination. Mr. Kaa's condition doesn't. And so the United States Census and Commission agreed. And the Ninth Circuit in Stacia found a similar state condition to truthfully answer all inquiries. It in fact forced a waiver of self-incrimination and justified invoking the penalty doctrine. And that Stacia decision also shows that the government's claim they cannot revoke for invoking is not true because the Ninth Circuit and the Eleventh Circuit Robinson decision where the government sought replication for violating an answer all condition by invoking the privilege and the Eleventh Circuit affirmed. So now just to go to get to Riley. This panel has asked some questions about whether or not we have an obligation to reconcile Riley and Heyman. And I think that is the wrong inquiry you guys should be making. The inquiry should be what is the most faithful interpretation of the Supreme Court's opinion in Heyman. So just recently the whole Fourth Circuit had to decide whether or not they could find a way to reconcile Sessions and DeMaia with prior cases affirming 924C. Was there a way? Sure. The dissenting justices of the Supreme Court laid out a way you could reconcile the two. But the correct and most faithful interpretation was that DeMaia and Johnson made it so 924C's residual clause had to fall. And that is what we have here. Could you adopt the most narrow possible ruling to find that 3583K gets constitutional rights but everyone else doesn't? Sure. But is that the most faithful interpretation of Heyman? No, it's not. The most faithful interpretation is what Justice Breyer said. A revocation is part of sentencing. I don't give defendants a jury trial right to ordinary sentencing factors. But commission of a new sex offense carrying a mandatory minimum is no ordinary sentencing factor. It's like a new criminal prosecution. And so we ask that you hold the Fifth Amendment applies in the revocation proceedings and it was violated in this case. Counselor, exactly in that sense what the court was saying is that the whole idea is that a supervised release, you're talking about an extension. It is a part of the original sentence. Yes. That's the thing. It is inextricably tied where parole and probation is something totally different. It's a different framework. And that's what this revocation sentence is a part of the original sentence. You know, it's a trial. It's a trial aspect of it. And you can't it has the same criminal implications. And whether you're talking about K or E, it undermines Riley relying on Murphy for this categorical safety net for its reason. And that safety net is, if not gone, it is jurisprudential in question. And in terms of what you're urging us to do is that not to ignore that and just go completely, even though the whole premise of Riley is wrong, because the reason that it said there weren't protections in revocation sentences is because it was just like parole. No, there is a difference. And Haman explained why. There are different functions and there are consequences to it. Now, how broad those consequences are, I'll give it. It did not give breadcrumbs, but it gave enough of a fresh smell of loaf baking bread that ought to entice a court to follow what the olfactory senses lead us to. If I may just briefly comment on that. Yes, please. Yes. So I just want to point out every single justice, all three opinions in Haman recognize the practical factual difference between supervised release revocations and probation and parole. In supervised release revocations, you're adjusting and adding on to the sentence with a huge swath of judicial discretion, versus probation and parole, you're just reactivating the sentence that was originally imposed at the original sentence. Now, so they all agree that factual difference, but in Haman, five of the justices said that that matters when it comes to what constitutional rights defendants have in supervised release revocations versus parole and probation. And that is the point Chief Justice Gregory is making and that I think is the correct and best interpretation of Haman. Well, I think it is a very, it's an interesting interpretation. It does indeed come from the Gorsuch plurality opinion. But you know what makes this case really interesting is really not the law. It's really the facts. I mean, somehow you get lost when we as judges and lawyers get lost in what's really happening here. You got an individual who keeps testing positive, no matter how much you bring him in for supervised release. You give him this sentence and you said, okay, at the end of the sentence you're going to have a five-year term of supervised release. We could take the safest bets you ever want to make right now, that guy is going to go right back to jail. If you tell him he comes back and positive, he's going back. It's a sad, sad case, no matter how this turns out for this defendant, that what's missing here is there's nothing here to indicate it is taking care of the real problem in this case. This guy has a drug problem. He's got something going on that no ordinary person does. You don't go in on May the 17th, test positive for cocaine. They tell you come back, you go into jail, and then you come back a couple months later and you test positive again. Probably could have brought him in the next couple of months, test him again. And that's not part of the record, but it is tremendously frustrating for me as a judge to sit here and engage in a colloquy on law and how we can nuance a Supreme Court case with Raleigh and whatever needs to be done. Economically, however, I don't know. I just felt the need to say that. This is a sad situation to me, that this is the state of our law, that we deal with individuals in this manner, knowing full well that five-year term of supervisory release, you might as well just keep him in jail, do absolutely nothing for him. Maybe they did do something for him. There's nothing in the record. But I don't see any hope here. Mr. Tye is going to come back to jail, if I had to make a good prediction to you, one way or the other. And I think everybody here knows that, unless some miracle happens to get him some help for what he really needs help for. And it's just a sad situation. I don't know how we get around it. Well, just an update to give you some comfort, Judge. He has been out on probation. He served his sentence. He's doing pretty well. He actually asked the probation officer to modify his conditions to get him some mental health treatment. So he has been doing well, and he does still have about a year to go on his supervision. That's the punishment he should get. Get mental health treatment and get something to help him. He's got a problem. And throwing him back in jail is not fixing it. I don't get it. But that's what we're left with with the law. All right. Ms. Baldwin, Mr. Enright, thank you so much for your argument. I regret that we can't come down and greet you like we normally would in our Fourth Circuit tradition, but know that virtually and in reality, we so thank you and express our deep appreciation for your service to this court and to your client, of course. Thank you so much. Thank you, Your Honor. I asked the clerk to give us a brief recess in the court. This Honorable Court will take a brief recess.
judges: Roger L. Gregory, James A. Wynn Jr., Pamela A. Harris